R. Christopher Harshman, Esq. (248214)
  chris@packetlaw.com
DAVID M. SHABY II & ASSOCIATES
11949 Jefferson Blvd. Ste 104
Culver City, California 90230
Telephone:  (310) 827-7171
Facsimile:   (310) 382-2092

*Attorneys for AvSport LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AvSport LLC,<br><br>                Plaintiff,<br><br>    vs.<br><br>The Associated Press; and DOES 1-10,<br><br>               Defendants. | Case no. CV 20-871<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

## INTRODUCTION

1. This is a civil action seeking injunctive and declaratory relief regarding the use, by plaintiff AvSport LLC ("AvSport" or "Plaintiff"), of certain images (the "Photos") in which defendant The Associated Press ("Defendant" or "AP") claims to hold the copyright. AvSport also does business as AvSport of Lock Haven, a fictitious business name registered with the Pennsylvania Department of State.

2. This case arises from the assertion of copyright infringement against a retired professor and certificated flight instructor, who was preparing to use the Photos in educational materials used in free safety seminars provided to pilots as part of the WINGS - Pilot Proficiency Program ("WINGS").

## PARTIES

3. Plaintiff AvSport is a Pennsylvania limited liability company.

4. Plaintiff has reviewed the Defendant's website, including its list of "local bureaus" *available at* https://www.ap.org/bureaus, as well as the California Secretary of State's records. Plaintiff is, based on the information obtained from those and other sources, informed and believes that AP is a New York corporation, registered to do business in the State of California with California Corporate Number C0034834, and that the AP maintains a location in the City of Los Angeles, located at 221 S Figueroa St Ste 300, Los Angeles CA 90012, with the telephone number (213) 626-1200. Plaintiff is additionally so informed, and believes, that the AP maintains other local bureaus in the State of California, including in Sacramento, San Diego, and San Francisco.

## Jurisdiction and Venue

5. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201, seeking a declaration of the parties' rights, duties, and obligations in connection with certain works purportedly protected by the United States Copyright Act, 17 U.S.C. §§ 101 *et seq*. This Court has original subject matter jurisdiction under Title 28 of the United States Code, Sections 1331 ("original jurisdiction of all civil actions arising under the ... laws ... of the United States") and 1338(a): "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to … copyrights ... No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to … copyrights."

6. On information and belief, the Defendant is subject to the general and specific jurisdiction of this Court, for reasons including but not limited to, the following:

(a) AP substantially, continuously, and systematically transacts business within the State of California and within this judicial district, including (*inter alia*) maintaining a permanent local bureau in the City of Los Angeles and other permanent offices elsewhere within the State of California (*see*, *e.g.*, ¶ 4, *supra*);

(b) AP has purposefully directed its activities at, and entered into at least one directly relevant transaction within, this judicial district, in that it has hired the law firm Higbee & Associates ("Higbee"), based in Santa Ana, California, and has appointed

that firm its attorney in fact for the purposes of negotiating and entering into settlement agreements resolving copyright infringement claims including specifically the claim at issue in this matter (*see, e.g.*, ¶¶ 31–47, *infra*), which thus necessarily arises from or is related to AP's forum-related activities;

   (c) This action arises from AP's contacts with the State of California and this judicial district, both as set forth above and because one of the Photos (*see* ¶ 14(b), *infra*) was created in San Francisco, California; and

   (d) The Court's exercise of jurisdiction in this matter comports with fair play and substantial justice, i.e., it is reasonable, because (*inter alia*): (i) AP has extensively injected itself into the affairs of California, maintaining at least four permanent offices here (including one within this Court's judicial district); (ii) Any burden to AP in defending this action in this forum is minimal, given that it has a pre-existing, strong, relationship with Higbee, a law firm whose threats of legal enforcement give rise to this action; and (iii) No conflict exists as to the sovereignty of New York (where AP is headquartered) and California, in this federal question matter concerning copyright, especially as both New York and California are states of the United States of America.

 7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(d), because AP is subject to personal jurisdiction in several of the judicial districts in the State of California, including maintaining significant, ongoing contacts with the County of Los Angeles, in the Central District for the State of California; venue is also proper here under 28 U.S.C. § 1400, because AP and its agent, Higbee, reside in this judicial district.

FACTUAL ALLEGATIONS

I. THE SEMINARS

 8. The WINGS program is coordinated by the United States Department of Transportation, Federal Aviation Administration ("FAA"). "The objective of the WINGS - Pilot Proficiency Program is to reduce the number of accidents in General

1 | Aviation (GA) by assisting airmen to find educational opportunities designed to help
2 | them apply the principles of risk assessment and risk management…"[1].

3 | 　　　　9.　　Plaintiff, including through its member and manager, retired college
4 | professor Dr. H. Paul Shuch, Ph.D. ("Shuch"), regularly provides pilot safety and
5 | training seminars under the WINGS program (the "Seminars"). Dr. Shuch is a long time
6 | FAA Safety Team ("FAASTeam") Representative, and is currently a Lead
7 | Representative, an unpaid, volunteer position.

8 | 　　　　10.　　The FAASTeam Mission Statement is: "Lower the Nation's aviation
9 | accident rate by conveying safety principles and practices through training, outreach, and
10 | education; while establishing partnerships and encouraging the continual growth of a
11 | positive safety culture within the aviation community." About the FAASTeam, *available*
12 | *at* https://www.faasafety.gov/about/mission.aspx

13 | 　　　　11.　　FAASTeam Representatives are "[a]viation safety volunteers that wish to
14 | work closely with FAASTeam Program Managers (FPM) to actively promote safety." *Id.*

15 | 　　　　12.　　The Seminars are free for interested parties - pilots, mostly, but also
16 | members of the general public - to attend. Neither Plaintiff nor Dr. Shuch are
17 | compensated in any way for providing these Seminars, and the Seminars are not used as
18 | advertising or to "drive business" to Plaintiff or Dr. Shuch. Many of these Seminars are
19 | given as "webinars" to a nationwide audience highly unlikely to ever be in a position to
20 | establish any sort of business relationship with Dr. Shuch or AvSport.

21 | 　　　　13.　　Until the events set forth here, Dr. Shuch and AvSport made these
22 | educational, safety-focused materials available on the AvSport website, free of charge, so
23 | that interested pilots, instructors, and students could retrieve and review them at any
24 | time.

25 | II.　**The Photos**

26 | 　　　　14.　　Defendant asserts ownership of exclusive rights in two images:

---

[1] Advisory Circular AC 61-91J, *available at*
https://www.faa.gov/documentLibrary/media/Advisory_Circular/AC%2061-91J.pdf

(a) A photo depicting the "Miracle on the Hudson," the January 15, 2009 event where an Airbus A320 operated as US Airways Flight 1549 made an emergency landing in the Hudson River, identified by the Defendant's purported agent as "Catalog Image No. 090115148604" ("Photo 1"); and

(b) A photo depicting the aftermath of Asiana Airlines Flight 214, in which a Boeing 777-200ER crashed on final approach into the San Francisco International Airport on July 6, 2013, identified by the Defendant's purported agent as "Catalog Image No. 232345237510" ("Photo 2").

15. Plaintiff is informed and believes that the Photos have not been registered with the Copyright Office, and therefore, no statutory damages or attorneys' fees are available in an infringement action. (17 U.S.C. § 412.)

16. Plaintiff located the Photos using a Google Images search and downloaded the Photos directly from Google.

17. Plaintiff did not at any time see any notice of copyright attached, affixed, or embedded in either of the Photos, and is informed and believes that the Photos as downloaded contained no such notice, in metadata or visible upon the image.

18. Plaintiff did not at any time see any copyright management information attached, affixed, or embedded in either of the Photos, and is informed and believes that the Photos as downloaded contained no such notice, in metadata or visible upon the image.

19. Plaintiff did not intentionally remove or alter any copyright management information from the Photos.

20. Plaintiff is informed and believes the Photos were published without notice of copyright.

III. THE USE

21. AvSport incorporated the Photos into a PowerPoint presentation that was to be used in WINGS Seminars. The Photos were enhanced by adding transcriptions and recordings of cockpit voice recorders and radio communication with air traffic control.

22. AvSport incorporated these Photos into a PowerPoint slideshow (the "PPS File") that was to be used in teaching Crew Resource Management ("CRM"); the photos were intended to graphically illustrate the disparate outcomes an aircraft in an emergency might encounter, with and without effective CRM techniques.

23. CRM is a critical component in safe aircraft operation, as recognized by the FAA: "Crew Resource Management can be traced to the early 1970s following a series of deadly accidents. Researcher discovered that it was not mechanical failure causing a vast majority of accidents but rather pilot/crew error."[2]

24. The PPS File was under development by Dr. Shuch and stored on AvSport's web server, and had not yet been shown in any Seminar or to any student.

## IV. THE THREATS

### A. PicRights

25. On or before July 31, 2019, AvSport is informed and believes, based on a letter sent to Plaintiff with that date (a true and correct copy of which is attached hereto as **Exhibit A**, and hereby incorporated by reference), that a company called PicRights Ltd. ("PicRights")[3] used an automated web crawler system to find the PPS File and identify the Photos used therein.

26. PicRights claims, in that July 31, 2019, letter, to be writing "on behalf of Associated Press," and uses the AP logo prominently in the letterhead. PicRights further states it "provides licensing compliance services to third-party content owners, including Associated Press."

27. PicRights demanded, in this first correspondence, "payment of compensation in the amount of $1150.00 for the past unauthorized usage of the imagery."

28. PicRights followed up that letter with another, dated August 28, 2019, repeating the same claims but now demanding Plaintiff "remit the payment of $690.00

---

[2] FAA TV: The History of CRM, *available at* https://www.faa.gov/tv/?mediaId=447.
[3] The address given by PicRights is: 3 Concorde Gate, Suite 209, Toronto, ON, Canada M3C 3N7.

for your past usage," and further stating: "In the interest of settling this matter, PicRights is prepared at this point to resolve this matter in exchange for a payment of $690.00." A true and correct copy of this correspondence is attached hereto as **Exhibit B**, and hereby incorporated by reference.

29. PicRights sent a final "courtesy reminder" on September 4, 2019 via email, again demanding AvSport "remit settlement payment" and "resolve your unauthorized use of Associated Press's imagery."

30. Plaintiff responded in writing to the PicRights correspondence with descriptions of how the images were used (e.g., that they were "shown in free public safety seminars, with the intent of providing continuing education to pilots," and that the "accident photos [were] juxtaposed against cockpit voice recorder recordings and FAA air traffic control transcripts, along with other materials taken from NTSB accident reports, allowing a complete accident reconstruction in these seminars"), to no avail.

### B.   Higbee & Associates

31. The next communication AvSport received regarding the Photos was a letter, dated November 11, 2019, from Higbee, which describes itself as "a national law firm" but which lists only one phone number, (714) 617-8300, in Orange County, California[4]. A true and correct copy of this correspondence (the "Initial Higbee Letter"), with attachments, is attached hereto as **Exhibit C**, and hereby incorporated by reference.

32. The Initial Higbee Letter lists only an address for its "Corporate HQ," that being 1504 Brookhollow Dr., Suite 112, Santa Ana, CA 92705.

33. The Initial Higbee Letter clearly threatens imminent litigation, starting off with: "The Law Firm of Higbee & Associates represents Associated Press. After making several unsuccessful efforts to resolve a copyright matter … with AvSport … Associated Press has now fired our law firm to pursue this claim. We hope that we will resolve this matter **without going to court**." The letter further cautions: "[W]e believe the use of

---

[4] https://www.higbeeassociates.com/contact/

7
COMPLAINT

the work [sic] is a violation of The Copyright Act, Title 17 of the United State Code. If **forced to go to court to resolve the matter**, our client will ask for the maximum justifiable damages." (The letter attached copies of 17 U.S.C. §§ 504-505 and 1202-1203.) The Initial Higbee Letter ends with: "If we do not hear from you within 14 days from the date of this letter, we will consider that to mean AvSport … does not want to settle this matter **out of court**." (All emphases added.)

34. The Initial Higbee Letter demanded AvSport "pay $2300 to settle this matter."

35. The Initial Higbee Letter further states: "[I]f you are a non-commercial entity … please let us know as you are probably receiving this letter in error. In general, we define commercial entities as any individual or entity that derives or attempts to derive revenue through selling advertising, promoting or selling goods or services, or soliciting donations."

36. The Initial Higbee Letter also attached a document entitled "Letter of Representation Power of Attorney," purportedly signed by (inter alia) Ted Mendelson on behalf of "Client: The Associated Press." This document states, in part: "[T]he Law Firm of Higbee & Associates has been retained by PicRights Ltd., PicRights Europe GmbH, and THE ASSOCIATED PRESS regarding a copyright infringement matter." This document lists the same Santa Ana address recited above.

37. The Initial Higbee Letter further attached a Release and Settlement Agreement, the preamble of which establishes it to be "by and between Associated Press … and AvSport."

38. The Initial Higbee Letter was followed closely by an apparently identical letter, dated November 14, 2019.

39. On November 19, 2019, an email from "Copyright Claims" <claim@higbeeassociates.com> was received by AvSport, with content essentially identical to the Initial Higbee Letter. This email was "signed" by Mathew K. Higbee, with only the Santa Ana address in the signature block.

40. On December 2, 2019, Jade Dali of Higbee & Associates ("Dali") wrote Dr. Shuch, threatening potential "escalation of this claim." This email also listed the Santa Ana address for "Law Offices of Higbee & Associates," and provided a 657 area code (north Orange County, California) "Direct Phone" number for Dali, along with a 714 area code (Orange County, California) fax number.

41. On December 6, 2019, Dali again wrote AvSport via email, attaching the Initial Higbee Letter (identified as an "Initial Demand Letter" in the attachment filename).

42. Dr. Shuch responded to Dali's December 2, 2019 email, again noting the non-profit, educational nature of AvSport's use of the Photos: "I am a retired academic, providing aviation safety training on a free, non-commercial basis, in my capacity as a long-time volunteer FAA Safety Team Representative. I develop and deliver safety seminars without compensation, in the interest of reducing aviation accidents." This response clearly raised the defense of fair use, noting "the images were intended for inclusion in free, non-profit educational use as allowed by Section 107 of copyright law." Dr. Shuch also requested "a copy of the federal copyright filing for the two specific images in question." A true and correct copy of this email exchange is attached hereto as **Exhibit D**, and hereby incorporated by reference.

43. A Mr. Theodore W. Sell, Attorney at Law has engaged in discussions with Plaintiff regarding the alleged infringement of the Photos. Mr. Sell identifies himself as practicing in Higbee & Associates' "Copyright Division," and lists his contact information as: Law Firm of Higbee & Associates, 1504 Brookhollow Dr. Suite 112, Santa Ana, CA 92705, tsell@higbeeassociates.com, (657) 229-6215.

44. Although Mr. Sell uses that Orange County, California address and telephone number, Plaintiff is informed and believes, based on a search of the California

COMPLAINT

State Bar's "Attorney Search" feature[5], and Mr. Sell's page on the Higbee & Associates website[6], that Mr. Sell is not licensed to practice law in the State of California.

45.  In a December 19, 2019 email from Mr. Sell to Stephen Carver, an attorney representing Plaintiff. Mr. Sell discussed the ramifications of 17 U.S.C. ¶ 411: "our client will register the copyright **prior to the filing of a suit**." (Emphasis added.) In this email, Mr. Sell engaged in a lengthy discussion of, inter alia, copyright fair use, concluding that, as far as AP was concerned, Plaintiff's use could not be "fair." A true and correct copy of this email is attached hereto as **Exhibit E**, and hereby incorporated by reference.

46.  Correspondence between Messrs. Sell and Carver continued through January 2020.

47.  Mr. Sell responded via email on January 15, 2020, disputing the "fair use" nature of Plaintiff's use of the Photos, stating, inter alia: "Your client [will] need to show that at least a majority of the statutory factors weigh in its favor but with none weighing in its favor, it will still fail!" Mr. Sell then opines as to how a court will decide these issues. A true and correct copy of this email exchange is attached hereto as **Exhibit F**, and hereby incorporated by reference.

## First Cause of Action

*For Declaratory Relief Against All Defendants*

48.  Plaintiff hereby incorporates by reference the preceding paragraphs 1 through 47 as though fully set forth here.

49.  As set forth above, an actual controversy has arisen and now exists between AvSport and Defendant.

50.  AvSport has a reasonable apprehension that it will be subject to liability regarding its use of the Photos, based on AP's repeated insistent demands for payment and implied threats of litigation if this matter does not "settle out of court," as set forth above, and in the attached exhibits.

---

[5] *Available at* http://members.calbar.ca.gov/fal/LicenseeSearch/
[6] *Available at* https://www.higbeeassociates.com/about/attorneys/theodore-sell/ ("Licensed to practice in Colorado")

51. The adverse positions of the parties have crystallized, as demonstrated by the correspondence between AvSport's attorney and AP's attorney set forth above, and in the attached exhibits.

52. The conflict of interests is real and immediate, in that AvSport has already been forced to remove educational, safety-focused, freely available content from public access as a result of AP's legal threats and position, and is demanding - with increasing fervor - that AvSport enter into a settlement agreement and pay it money for the "infringement" of the Photos.

53. AvSport, in turn, contends its use of the Photos is a fair use contemplated by 17 U.S.C. § 107, and notes that fair use has been deemed "a right granted by the Copyright Act of 1976" (*Lenz v. Universal Music Corp.*, 801 F.3d 1126, 1133 (9th Cir. 2015), collecting authority (internal quotation omitted)). Specifically:

    (a) The purpose and character of AvSport's use of the Photos strongly supports a finding of fair use, in that (inter alia): (1) AvSport's use was for scholarly and teaching purposes, an enumerated purpose in 17 U.S.C. § 107 strongly presumed to be a fair use (*Wright v. Warner Books, Inc.*, 953 F.2d 731, 736 (2d Cir. 1991)); (2) AvSport's use is transformative, adding something new (e.g., cockpit and ATC recordings, teaching commentary, explanations) with a further purpose or different character, altering AP's Photos with new expression, meaning, or message and used in a wholly different context to serve a different function than AP's original use of the Photos; and (3) AvSport's use of the Photos was entirely non-commercial, as AvSport received no fees and never would have charged fees or otherwise derived any revenue for the use, for the Presentation, or for the PowerPoint file, but rather made and would have made the Photos, incorporated into AvSport's Presentations and materials, freely available to the world to promote public interest, specifically, aviation safety.

    (b) The nature of AP's Photos, being factual depictions of newsworthy aviation events that were first published well before AvSport's use, weighs in favor of fair use.

(c) AvSport used the entirety of the Photos (resized) because the Photos could not be naturally severed, and because AvSport's use required the full image of each of the Photos, and as such the amount and substantiality of the Photos used by AvSport does not weigh against a finding of fair use.

(d) AvSport's use of the Photos, resized to a low resolution to fit within a PowerPoint presentation, could not substitute for the original Photos. Further, AvSport's use of the Photos in an aviation safety teaching context, served a different market function. AvSport's use, then, had no negative effect upon the potential market for or value of AP's copyrighted Photos, and this factor weighs in favor of a finding of fair use.

54. Accordingly, AvSport desires a judicial determination of the parties' respective rights and duties, and a declaration that AvSport's use of the Photos was a fair use under the Copyright Act.

55. A judicial declaration is necessary and appropriate under the circumstances so that AvSport may ascertain the parties' respective rights and duties and eliminate any dispute regarding the alleged infringement.

### Relief Requested

Wherefore, AvSport prays for judgment as follows:

1. For an order declaring that AvSport's use of the Photos was fair use as contemplated under 17 U.S.C. § 107;

2. AP is entitled to nothing from AvSport;

3. For costs of suit herein, including attorneys' fees, where available; and

4. For such further relief as the Court may deem just and proper.

Respectfully submitted,

David M. Shaby II & Associates

Date: January 28, 2020   By: /s/ R. Christopher Harshman
R. Christopher Harshman, Esq.
Attorneys for AvSport LLC