R. Christopher Harshman, Esq. (248214)
  chris@packetlaw.com
11949 Jefferson Blvd. Ste 104
Culver City, California 90230
Telephone:  (310) 827-7171
Facsimile:   (310) 382-2092

*Attorneys for AvSport LLC*

# United States District Court

## Central District of California

| | |
|---|---|
| AvSport LLC,<br><br>                          Plaintiff,<br><br>              vs.<br><br>The Associated Press; *et al*<br><br>                          Defendants. | Case no. 2:20–cv–00871 DSF (JPRx)<br><br>Assigned to the Hon. Dale S. Fischer<br><br>**AvSport LLC's Opposition to Motion for Judgment on the Pleadings; Declaration of R. Christopher Harshman**<br><br>Date: June 29, 2020<br>Time: 1:30 p.m.<br>Place: First Street Courthouse<br>         350 West 1st St, Courtroom 7D<br>         Los Angeles, California 90012 |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................I

TABLE OF AUTHORITIES ........................................................................................ II

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

   I.   INTRODUCTION AND SUMMARY OF FACTS .................................................. 1

      A.   *Summary of Facts and Allegations* ............................................................ *1*

      B.   *Procedural History* ..................................................................................... *2*

      C.   *Extrinsic Facts* ............................................................................................ *3*

   II.   ARGUMENT ............................................................................................. 3

      A.   *Standard and Scope of a Motion for Judgment on the Pleadings* ............ *3*

      B.   *If the Court Treats this Motion as a Motion for Summary Judgment, Discovery is Required* ................................................................................................... *5*

      C.   *Fair Use and Public Policy* ........................................................................ *5*

      D.   *Fair Use as a Right* .................................................................................... *6*

      E.   *Analysis of Fair Use Factors are Interrelated and Requires Caution* ...... *7*

      F.   *The Purpose and Character of AvSport's Use* ........................................... *8*

      G.   *The Nature of the Photographs* ................................................................ *12*

      H.   *AvSport used only the Amount of the Photographs that was Necessary* ... *14*

      I.   *AvSport's Use had Minimal, if any, Effect on the Market for the Photographs* ...... *16*

   III.   CONCLUSION ...........................................................................................17

DECLARATION OF R. CHRISTOPHER HARSHMAN ............................................. 1

# TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..................................................................4

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1990)......................3, 4

*Bateman v. Mnemonics, Inc.*, 79 F.3d 1532 (11th Cir. 1996) ..............................7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...............................................4

*BWP Media USA, Inc. v. Gossip Cop Media, LLC*, 87 F. Supp. 3d 499 (S.D.N.Y. 2015) ... 9

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) ...........................passim

*Conley v. Gibson*, 355 U.S. 41 (1957) ..................................................................4

*Consumers Union of United States, Inc. v. Gen. Signal Corp.*, 724 F.2d 1044 (2d Cir. 1983) ...............................................................................................................13

*Doleman v. Meiji Mutual Life Ins. Co.*, 727 F.2d 1480 (9th Cir. 1984)............4, 5

*Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394 (9th Cir. 1997) .......8

*Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188 (9th Cir. 1989) ....................3

*Elvis Presley Enters. v. Passport Video*, 349 F.3d 622 (9th Cir. 2003) .....................13, 14, 17

*Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*, 132 F.3d 526 (9th Cir. 1997) .........3

*Ferdman v. CBS Interactive, Inc.*, 342 F. Supp. 3d 515 (S.D.N.Y. 2018) ...........................17

*Fitzgerald v. CBS Broad, Inc.*, 491 F. Supp. 2d 177 (D. Mass. 2007)................................17

*Four Navy Seals & Jane Doe v. AP*, 413 F. Supp. 2d 1136 (S.D. Cal. 2005) .......................8

*Graham Archives v. Dorling Kindersley Limited*, 448 F.3d 605 (2d Cir. 2006)...................17

*Gregg v. Dep't of Pub. Safety*, 870 F.3d 883 (9th Cir. 2017)...........................................4

*Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542 (9th Cir. 1989)... 4, 5

*Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539 (1985)..........8, 15, 16, 18

*Hines v. Youseff*, 914 F.3d 1218 (9th Cir. 2019)...............................................................4

*Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148 (9th Cir. 1986)...........3, 8, 16

*Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104 (2d Cir. 1998) ........................................17

*Jarvis v. K2 Inc.*, No. C03-1265Z, 2004 U.S. Dist. LEXIS 33246 (W.D. Wash. Sep. 30, 2004)...................................................................................................................8

*Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2003) ..........................................16, 17, 18

*L.A. News Serv. v. CBS Broad., Inc.*, 305 F.3d 924 (9th Cir. 2002) ..................................15

*L.A. News Serv. v. KCAL-TV Channel 9*, 108 F.3d 1119 (9th Cir. 1997) .....................15

*L.A. News Serv. v. Reuters TV Int'l, Ltd.*, 149 F.3d 987 (9th Cir. 1998) ......................12, 15

*L.A. News Serv. v. Tullo*, 973 F.2d 791 (9th Cir. 1992)........................................................15

*Lennon v. Premise Media Corp., L.P.*, 556 F. Supp. 2d 310 (S.D.N.Y. 2008)....................14

*Lenz v. Universal Music Corp.*, 801 F.3d 1126 (9th Cir. 2015) .............................................7

*Marcus v. Shirley Rowley & San Diego Unified Sch. Dist.*, 695 F.2d 1171 (9th Cir. 1983) ..11, 15

*Mattel Inc. v. Walking Mountain Productions*, 353 F.3d 792 (9th Cir. 2003) ......................19

*N. Jersey Media Grp., Inc. v. Jeanine Pirro & Fox News Network, LLC*, 74 F. Supp. 3d 605 (S.D.N.Y. 2015) .......................................................................................................17

*National Rifle Assoc. of America v. Handgun Control Federation*, 15 F.3d 559 (6th Cir. 1994) ...........................................................................................................................19

*Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18 (1st Cir. 2000) ...................................15

*Pac. & S. Co. v. Duncan*, 744 F.2d 1490 (11th Cir. 1984) ....................................................6

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007)......................... 8, 11, 16

*Philpot v. Alternet Media, Inc.*, No. 18-cv-04479-TSH, 2018 U.S. Dist. LEXIS 203500 (N.D. Cal. Nov. 30, 2018) ...................................................................................................9

*Powe v. Chicago*, 664 F.2d 639 (7th Cir. 1981)......................................................................5

*Savage v. Council on Am.-Islamic Rels., Inc.*, No. C 07-6076 SI, 2008 U.S. Dist. LEXIS 60545 (N.D. Cal. July 25, 2008)........................................................................................8

*Seltzer v. Green Day, Inc.*, 725 F.3d 1170 (9th Cir. 2013) ........................................ passim

*Sofa Entm't, Inc. v. Dodger Prods.*, 782 F. Supp. 2d 898 (C.D. Cal. 2010) ...................6, 14

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984)...................... passim

*Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129 (9th Cir. 2006)................................3

*Stewart v. Abend*, 495 U.S. 207 (1990)................................................................................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748 (1976) ................................................................................................................13

*Wall Data Inc. v. L.A. Cty. Sheriff's Dep't*, 447 F.3d 769 (9th Cir. 2006)........................11

*Warner Bros. Entertainment Inc. v. RDR Books*, 575 F. Supp. 2d 513 (S.D.N.Y. 2008) .... 14

*Wright v. Warner Books, Inc.*, 953 F.2d 731 (2d Cir. 1991) ............................................. 6, 8

**STATUTES**

17 U.S.C. § 107 ............................................................................................ passim

**RULES**

Fed. R. Civ. P. 26 .......................................................................................... 5

Fed. R. Civ. P. 56 .......................................................................................... 5

## Memorandum of Points and Authorities

## I.   Introduction and Summary of Facts

Defendant The Associated Press ("Defendant" or "AP") has moved for judgment on the pleadings in this matter (ECF No. 24, the "Motion"), relying inappropriately on extrinsic facts that the Court cannot consider in connection with such a motion. The Defendant's Motion careens through a lopsided and disingenuous analysis of the factors considered in determining fair use under copyright law, but fails to demonstrate that the Complaint brought by Plaintiff AvSport LLC ("Plaintiff" or "AvSport") is fatally defective or that the Defendant is inarguably entitled to prevail. As such, judgment on the pleadings (i.e., dismissal) is inappropriate at this stage, and the Defendant's Motion must be denied.

### A.   Summary of Facts and Allegations

AvSport is a limited liability company that has been accused of copyright infringement by the Defendant. Complaint (ECF 9-1, "Compl."), ¶¶ 1, 3. Professor Dr. H. Paul Shuch, Ph.D. ("Shuch"), as an unpaid volunteer, was preparing freely available educational materials (including the "PowerPoint Presentation" at issue here) to be used in free safety seminars he presents as part of an teaching program orchestrated by the Federal Aviation Administration ("FAA"). *Id.* ¶¶ 2, 8-13. These seminars, under the auspices of the FAA's Safety Team ("FAASTeam"), advance an important public policy: "Lower[ing] the Nation's aviation accident rate by conveying safety principles and practices through training, outreach, and education ..." *Id.* ¶ 10.

These seminars are free to the public to attend, and are presented typically both in person and as "webinars" to a nationwide audience (*Id.* ¶ 12); the PowerPoint Presentation itself, like all of Dr. Shuch's materials before the Defendant's threats chilled his appetite, was made available on the Internet to anyone in the world to download, free of charge (*Id.* ¶ 13).

AvSport set forth these facts in its Complaint. Responding to those allegations, the Defendant responded to each simply: "AP is without knowledge or information

sufficient to admit or deny the allegations of this paragraphs and on that basis denies them." Answer, ¶¶ 8-13. Well before this litigation commenced, the Defendant was made aware of the nature and extent of the use of the materials at issue here. *Id.*, ¶ 42.

In preparing a seminar on Crew Resource Management ("CRM"), a "critical component in safe aircraft operations" (*Id.* ¶ 23), Dr. Shuch searched the Internet using Google (*Id.* ¶ 16[1]) and found two photographs (each a "Photograph," together the "Photographs") that depicted the divergent outcomes of two aviation incidents that stand as opposite examples of good and bad CRM. He incorporated these photographs into the PowerPoint Presentation he was compiling to use for free FAASTeam safety seminars. *Id.* ¶¶ 21-24. The PowerPoint Presentation (with the "FAAST FAA Safety Team" logo visible at the top left corner of every slide) is attached as Exhibit C to the Defendant's Answer.

Dr. Shuch's use of the Photographs, and the Defendant's escalating demands and threats of litigation (*Id.* ¶ 25-30), lead to his filing this action for declaratory judgment. The Defendant has answered the paragraphs comprising AvSport's cause of action for declaratory relief with simple denials. Answer ¶¶ 49-55.

The Defendant raises as affirmative defenses only (verbatim): "1. AvSport's claim for declaratory relief fails because there is no actual case or controversy between the parties[; and] 2. AvSport's claim of fair use fails because AvSport's actions as alleged in the Complaint and Answer constitute copyright infringement." Answer 8:3-7.

**B.    Procedural History**

AvSport filed this action on January 28, 2020.

The Defendant was granted additional time to file its answer (Court's March 10, 2020 Order, ECF No. 18), and answered on March 27, 2020.

On March 30, 2020, the Court issued a notice of scheduling conference (ECF No. 20), setting that conference to be held on June 8, 2020.

---

[1] An allegation the Defendant again answered with: "AP is without knowledge or information sufficient to admit or deny the allegations of this paragraphs and on that basis denies them." Answer ¶ 16.

1    On May 21, 2020, the Defendant filed and served the instant Motion, to be heard

2 on June 29, 2020.

3        **C.    Extrinsic Facts**

4        The Defendant, in its instant Motion, has recited extrinsic facts not found within

5 the Complaint or Answer in this action, including, e.g., at 1:12-14, 2:2-8, 2:27-3:11, 10:26-

6 11:18, 15:3-12, and in the Declaration of Mathew K. Higbee (ECF No. 24-1) (with

7 exhibits) filed concurrently with the Motion.

8 **II.    ARGUMENT**

9        **A.    Standard and Scope of a Motion for Judgment on the Pleadings**

10        "Judgment on the pleadings is proper when, taking all allegations in the pleading

11 as true, the moving party is entitled to judgment as a matter of law." *Stanley v. Trustees of*

12 *Cal. State Univ.*, 433 F.3d 1129, 1133 (9th Cir. 2006). It must appear **beyond doubt** that

13 the plaintiff can prove **no** set of facts that would entitle it to relief. *Enron Oil Trading &*

14 *Transp. Co. v. Walbrook Ins. Co.*, 132 F.3d 526, 529 (9th Cir. 1997). Because a motion for

15 judgment on the pleadings is "functionally identical" to a motion to dismiss, the

16 standard for a Rule 12(c) judgment on the pleadings is essentially the same as for a Rule

17 12(b)(6) motion. *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

18 Thus, dismissal is appropriate **only** if the plaintiff fails to assert a cognizable legal theory

19 or to allege sufficient facts under a cognizable legal theory. *See Balistreri v. Pacifica Police*

20 *Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

21        "For the purposes of such a motion, the allegations of the non-moving party must

22 be accepted as true, while the allegations of the moving party which have been denied are

23 assumed to be false." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d

24 1542, 1550 (9th Cir. 1989). Dismissal on the pleadings is proper only if the moving party

25 is clearly entitled to prevail. *Doleman v. Meiji Mutual Life Ins. Co.*, 727 F.2d 1480, 1482

26 (9th Cir. 1984).

27

28

1    Additionally, the Court must draw all reasonable inferences in favor of the non-

2    moving party. *Hines v. Youseff*, 914 F.3d 1218, 1227 (9th Cir. 2019); *Gregg v. Dep't of Pub.*

3    *Safety*, 870 F.3d 883, 887 (9th Cir. 2017).

4    In Section III(A) of its Motion, the Defendant asserts – without providing the

5    language that assertion is based on – that allegations need not "be construed in a light

6    favorable to the nonmoving party if such a construction cannot reasonably be made."

7    Motion 6:21-24 (citing *Hal Roach* at 1550). Nowhere in *Hal Roach* is that sentiment

8    stated. Likewise, the Defendant's reliance on *Balistreri*, *supra* (Motion 6:24-27) appears

9    misplaced; while the quoted language does appear in that decision, it is in the same

10   context as the court's observation that "[a] complaint should not be dismissed under

11   Rule 12(b)(6) 'unless it appears **beyond doubt** that the plaintiff can prove **no** set of facts

12   in support of his claim which would entitle him to relief.'" *Balistreri*, *supra* (quoting

13   *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)) (emphases added).

14   The Defendant's citations to *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

15   (Motion 7:1-8) likewise is left unexplained. AvSport is entitled to relief if it has alleged

16   "enough facts to state a claim to relief that is plausible on its face." *Twombly*, *supra*, 550

17   U.S. at 570; *and see*, *e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009): "To survive a

18   motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

19   to state a claim to relief that is plausible on its face." (internal quotation marks omitted).

20   The Plaintiff's Complaint makes sufficient factual allegations to support its cause

21   of action, and does not rely on conclusory recitals – nor has the Defendant attempted

22   (beyond naked citations and quotations) to establish otherwise.

23   **Scope**. "Judgment on the pleadings is proper when the moving party clearly

24   establishes **on the face of the pleadings** that no material issue of fact remains to be

25   resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios*, *supra*

26   (citing *Doleman*, *supra*) (emphasis added). "[J]udgment on the pleadings is improper

27   when the district court goes beyond the pleadings to resolve an issue; such a proceeding

28   must properly be treated as a motion for summary judgment." *Hal Roach Studios*, *supra*

1  (citing authority); *and see*, *e.g.*, *Powe v. Chicago*, 664 F.2d 639, 642 (7th Cir. 1981) ("a

2  court may consider only allegations made in the complaint and the answer; extrinsic

3  factual material may not be taken into account").

4      The Court must either disregard the Defendant's extrinsic evidence, or must treat

5  the Motion as a Motion for Summary Judgment.

6      **B.**    **If the Court Treats this Motion as a Motion for Summary Judgment,**

7          **Discovery is Required**

8      The Federal Rules of Civil Procedure provide: "If a nonmovant shows by affidavit

9  or declaration that, for specified reasons, it cannot present facts essential to justify its

10  opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to

11  obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate

12  order." Fed. R. Civ. P. 56. Here, as set forth in the Declaration of R. Christopher

13  Harshman ("Harshman Decl.") attached hereto, pursuant to Fed. R. Civ. P. 26(d)(1)

14  and 26(f)(1), insufficient time to conduct discovery has elapsed and AvSport lacks the

15  ability to meaningfully oppose this Motion if it is treated as a motion for summary

16  judgment. Accordingly, AvSport respectfully submits the Court should, in that

17  circumstance, deny the instant Motion or defer it considerably, so as to permit AvSport

18  time to take discovery.

19      **C.**    **Fair Use and Public Policy**

20      "The purpose of copyright law is '[t]o promote the Progress of Science and useful

21  Arts,' U.S. CONST. art. I, § 8, cl. 8, and to serve 'the welfare of the public.' *Sony Corp.*

22  *of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 429 n.10 (1984).

23      Section 107 of the Copyright Act of 1976 (17 U.S.C. § 107) in its preamble states in

24  relevant part: "[T]he fair use of a copyrighted work … for purposes such as criticism,

25  comment, news reporting, teaching (including multiple copies for classroom use),

26  scholarship, or research, is not an infringement of copyright." This list of illustrative

27  uses identifies those "likely to qualify as fair uses." *Pac. & S. Co. v. Duncan*, 744 F.2d

28  1490, 1495 (11th Cir. 1984) (*and see*, *e.g.*, *Sofa Entm't, Inc. v. Dodger Prods.*, 782 F. Supp.

2d 898, 903, 910 (C.D. Cal. 2010); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994) (preamble provides "general guidance about the sorts of copying that courts and Congress most commonly had found to be fair uses")).

Indeed, "there is a **strong presumption** that factor one [*infra*] favors [a finding of fair use] if the allegedly infringing work fits the description of uses described in section 107." *Wright v. Warner Books, Inc.*, 953 F.2d 731, 736 (2d Cir. 1991) (emphasis added). These uses are "productive use[s], resulting in some added benefit to the public beyond that produced by the first author's work. The fair use doctrine, in other words, permits works to be used for 'socially laudable purposes.'" *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 478-79 (1984) (Blackmum, dissenting).

As set forth below, an analysis of the non-exhaustive four factors set forth in 17 U.S.C. § 107 weigh in favor of the Court's finding to be fair AvSport's use of the Photographs in teaching materials dedicated to increasing public safety in aviation.

### D.   Fair Use as a Right

"Fair use is not just excused by the law, it is wholly authorized by the law." *Lenz v. Universal Music Corp.*, 801 F.3d 1126, 1132 (9th Cir. 2015). Title 17 of the United States Code, section 107, "explains that the fair use of a copyrighted work is permissible because it is a non-infringing use." *Lenz*, *supra*.

> Given that 17 U.S.C. § 107 expressly authorizes fair use, labeling it as an affirmative defense that excuses conduct is a misnomer:
> Although the traditional approach is to view "fair use" as an affirmative defense, . . . it is better viewed as a right granted by the Copyright Act of 1976. Originally, as a judicial doctrine without any statutory basis, fair use was an infringement that was excused—this is presumably why it was treated as a defense. As a statutory doctrine, however, fair use is not an infringement. Thus, since the passage of the 1976 Act, fair use should no longer be considered an infringement to be excused; instead, it is logical to view fair use as a right.

*Id.* at 1133 (quoting *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1542 n.22 (11th Cir. 1996) and citing authority).

AvSport has proactively asserted its right to make fair use of the Photographs in this action.

### E.     Analysis of Fair Use Factors are Interrelated and Requires Caution

"All fair use factors must be explored and weighed together, not in isolation, while considering the purposes of the Copyright Act. *Campbell* [*supra*] 510 U.S. at 578. Morever [sic], the scope of fair use is broader when the information relayed involves issues of concern to the public. [*Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 555-56 (1985)]." *Savage v. Council on Am.-Islamic Rels., Inc.*, No. C 07-6076 SI, 2008 U.S. Dist. LEXIS 60545, at *11 (N.D. Cal. July 25, 2008).

"We must be flexible in applying a fair use analysis; it 'is not to be simplified with bright-line rules, for the statute, like the doctrine it recognizes, calls for case-by-case analysis. . . .' *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1163 (9th Cir. 2007) (quoting *Campbell*, *supra*, 510 U.S. at 577).

"Fair use is a mixed question of law and fact." *Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148, 1150 (9th Cir. 1986) (citing *Harper & Row*, *supra*). "[D]istrict courts should be cautious in granting summary judgment." *Jarvis v. K2 Inc.*, No. C03-1265Z, 2004 U.S. Dist. LEXIS 33246, at *36 (W.D. Wash. Sep. 30, 2004) (citing *Wright*, *supra*, 953 F.2d at 735).

> [I]n light of a court's narrow inquiry on a Rule 12(b)(6) motion and limited access to all potentially relevant and material facts needed to undertake the analysis, it is unusual for courts to analyze fair use on a 12(b)(6) motion. *See Four Navy Seals & Jane Doe v. AP*, 413 F. Supp. 2d 1136, 1148 (S.D. Cal. 2005) [fair use "issue is inappropriate for determination in a 12(b)(6) motion"]; *cf. Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403 (9th Cir. 1997) (noting the difficulty of assessing a fair use defense where defendants do not submit evidence on an important part of it).

*Philpot v. Alternet Media, Inc.*, No. 18-cv-04479-TSH, 2018 U.S. Dist. LEXIS 203500 (N.D. Cal. Nov. 30, 2018).

As the United States District Court for the Southern District of New York (the "Southern District of New York") has noted: "Courts have granted motions to dismiss

infringement claims based on a defendant's fair use defense when discovery would not provide any additional relevant information and all that is necessary for the court to make a determination as to fair use are the two [works] at issue." *May v. Sony Music Entm't*, 399 F. Supp. 3d 169, 188 (S.D.N.Y. 2019) However, the Southern District of New York has also observed: "[T]here is a dearth of cases granting such a motion." *BWP Media USA, Inc. v. Gossip Cop Media, LLC*, 87 F. Supp. 3d 499, 505 (S.D.N.Y. 2015).

The Defendant here has brought a motion for relief (dismissing this action, essentially finding AvSport's use of the Photographs was not a fair use as a matter of law) that demands an in-depth factual analysis. As no discovery has yet been conducted in this matter, the questions of fact raised by AvSport's Complaint cannot adequately be resolved at this point, or via this procedural device. The Defendant's Motion is inappropriate at best.

### F.   The Purpose and Character of AvSport's Use

The first factor enumerated in 17 U.S.C. § 107 is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes."

AvSport's "use was for scholarly and teaching purposes" (Compl. ¶ 53(a)), in the free safety seminars conducted by Dr. Shuch (*Id.* ¶¶ 8-13). AvSport added "something new (e.g., cockpit and ATC recordings, teaching commentary, explanations" (*Id.* ¶¶ 21, 53(a)), and used the Photographs in a work, the PowerPoint Presentation, "with a further purpose or different character, altering AP's Photos with new expression, meaning, or message and used in a wholly different context to serve a different function than AP's original use of the Photos." *Id.* Finally, "AvSport's use of the Photos was entirely non-commercial, as AvSport received no fees and never would have charged fees or otherwise derived any revenue for the use, for the Presentation, or for the PowerPoint file, but rather made and would have made the Photos, incorporated into AvSport's Presentations and materials, freely available to the world to promote public interest, specifically, aviation safety." *Id.*, ¶¶ 8-13, 53(a).

In order to analyze this factor, the Court must generally consider the transformative nature of AvSport's use[2], and to what extent the use was commercial.

### 1.  AvSport's Use was Transformative

"The enquiry here may be guided by the examples given in the preamble to § 107, looking to whether the use is for criticism, or comment, or news reporting [… or teaching …]" *Campbell*, *supra*, 510 U.S. at 578-79.

> "The central purpose of this investigation is to see […] whether the new work merely supersede[s] the objects of the original creation ("supplanting" the original), or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is transformative […] Although such transformative use is not absolutely necessary for a finding of fair use […] the goal of copyright, to promote science and the arts, is generally furthered by the creation of transformative works. Such works thus lie at the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright […] and the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use."

*Id.* (internal quotations and citations omitted).

"'A use is considered transformative only where a defendant changes a plaintiff's copyrighted work **or** uses the plaintiff's copyrighted work in a different context such that the plaintiff's work is transformed into a new creation.'" *Perfect 10*, *supra*, 508 F.3d at 1165 (quoting *Wall Data Inc. v. L.A. Cty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006)).

**The Photographs were used in a new context.** The Defendant spends some considerably ink asserting, without discussing **how**, AvSport's use of the Photographs was "for the precise reason [the Photographs were] created." Motion 8:3-10; *see also* 9:23-28 (repeated verbatim). However, the Defendant does not contend that within the Complaint or Answer are allegations that the Photographs were created to assist in a

---

[2] Though a transformative use is not absolutely necessary to find fair use; *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 455 n.40 (1984).

discussion of aviation safety or for teaching purposes. The Photographs were taken and published for news reporting purposes; AvSport's use of each Photograph ("for scholarly and teaching purposes," Compl. ¶ 53(a)) serves a different "intrinsic purpose [than] for which the copyright owner intended it to be used." *Marcus v. Shirley Rowley & San Diego Unified Sch. Dist.*, 695 F.2d 1171, 1175 (9th Cir. 1983). "[E]ven making an exact copy of a work may be transformative so long as the copy serves a different function than the original work." *Perfect 10*, *supra*, 508 F.3d at 1165. Here, AvSport's use (providing a social benefit through teaching aviation safety concepts) serves a different function than the Defendant's use of the Photographs (news reporting), and thus transform the Photographs "into a new creation." *Id.* (quoting *Wall Data*, *supra*, 447 F.3d at 778).

**Changes to the Photographs.** The Defendant also asserts, disingenuously (if not falsely), that the commentary and other elements added by AvSport (Compl. ¶¶ 21, 53(a)) "added little or nothing to the original Photos, and in any event, were neither included nor apparent in the written version of the presentation placed on its site and disseminated to the general public." Motion 9:14-18.

In point of fact, the first Photograph (depicting US Airways flight 1549 on January 15, 2009 after an off airport landing known popularly as the "Miracle on the Hudson," Compl. ¶ 14(a)) appears on slide 12 of the PowerPoint Presentation, and Slide 13 is a link to a YouTube video (*available at* https://www.youtube.com/watch?v=mLFZTzR5u84) comprised of the air traffic control radio communications with US Airways flight 1549 in the moments leading up to the water landing depicted in that Photograph. The PowerPoint Presentation, being inherently a hypermedia platform, starts playing that audio when the slide is clicked (though of course that aspect cannot be conveyed in the "written version," anyone viewing the PowerPoint Presentation in the PowerPoint application certainly would experience that). Slides 15-19 of the PowerPoint Presentation are a textual transcript of the cockpit voice recorder from US Airways flight 1549, also from the moments leading up to that photograph. ECF No. 19-1, pages 20-31 of 123.

Likewise, the second Photograph (depicting the July 6, 2013 fatal crash of Asiana Airlines Flight 214, Compl. ¶ 14(b)) appears on slide 23 of the PowerPoint Presentation. Identical to the "Miracle on the Hudson" slides, the very next slide features a live link to a YouTube video (*available at* https://www.youtube.com/watch?v=Q5oCnZbNPtY) with the air traffic control radio communications with that flight just before that accident, while slides 26-29 are a textual transcript of the cockpit voice recorder from that flight. *Id.* pages 36-47 of 123.

These additions, especially in connection with the live seminars for which the PowerPoint Presentation was intended to be used, constitute the sort of explanation and editorial commentary that support a finding of fair use. *L.A. News Serv. v. Reuters TV Int'l, Ltd.*, 149 F.3d 987, 993 (9th Cir. 1998).

**Under either standard, AvSport's use was transformative.** A use is transformative where it supplies "new information, new aesthetics, new insights and understandings that are plainly distinct from those of the original piece." *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1177 (9th Cir. 2013) (internal quotations omitted). Where a non-transformative work "makes no alteration to the *expressive content or message* of the original work" (*Id.* (emphasis original)), a use "is typically viewed as transformative as long as new expressive content or message is apparent [even where] the allegedly infringing work makes few physical changes to the original or fails to comment on the original." *Id.*

*2. AvSport's Use was, at most, only Incidentally Commercial*

Although the Defendant's assertions, made for the first time in the Motion, are extrinsic and must be excluded from the Court's consideration of this Motion for Judgment on the Pleadings, any even feasible commercial gain (which, to the extent it exists at all, could only have been the most minimal and nebulous; Complaint, ¶¶ 8-13), is the sort of incidental commercial context that is afforded little weight: "[T]he degree to which the new user exploits the copyright for commercial gain—as opposed to incidental use as part of a commercial enterprise—affects the weight we afford

commercial nature as a factor." *Seltzer*, *supra*, 725 F.3d at 1178 (citing *Elvis Presley Enters. v. Passport Video*, 349 F.3d 622, 627 (9th Cir. 2003)).

> The distinction between "commercial nature" and "non profit educational purposes" is merely illustrative of what is included in assessing the core of the criterion, which is the purpose and character of the use. Regardless of motive, the "character" of Regina's ads includes the conveyance to consumers of useful information which is protected by the First Amendment. As the Supreme Court recognized in V*irginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748 […] (1976), commercial uses also serve the important function of educating the public.

*Consumers Union of United States, Inc. v. Gen. Signal Corp.*, 724 F.2d 1044, 1049 (2d Cir. 1983). AvSport did not directly benefit commercially **at all** from its use of the Photographs (Compl. ¶¶ 8-13, 53(a)), and if any indirect commercial benefit was derived, it was so miniscule as to avoid detection. Two photographs, on two out of fifty-six (56) slides in **one** presentation (of several prepared by Dr. Shuch), made available at no charge to a nationwide audience (*Id.* ¶¶ 12-13), does not constitute the sort of commercial use that would weigh against a finding of fair use, to the extent it can be construed as commercial use at all.

   *3.   Where Use is Transformative, Little Weight Given to Commercial Nature of Use*

  Where a use is transformative, little significance is given to the fact that the use may also be commercial. *Sofa*, *supra*, 709 F.3d at 1278-79; *Seltzer*, *supra*, 725 F.3d at 1177. This is especially true where the work is used in a way that benefits the public interest, as AvSport has done here. *Warner Bros. Entertainment Inc. v. RDR Books*, 575 F. Supp. 2d 513, 545 (S.D.N.Y. 2008); *Lennon v. Premise Media Corp., L.P.*, 556 F. Supp. 2d 310, 322 (S.D.N.Y. 2008).

### G. The Nature of the Photographs

  The second factor enumerated in 17 U.S.C. § 107 is "the nature of the copyrighted work."

  AvSport has asserted the Photographs are "factual depictions of newsworthy aviation events that were first published well before AvSport's use." Compl. ¶ 53(b).

In the instant Motion, the Defendant commingles (*Id.* 11:21-12:20) authority concerning whether or not a photograph is sufficiently creative to be afforded copyright protection with a misguided assertion that the Photographs are so particularly creative as to weigh against any finding of fair use. However, as set forth in the Complaint, the Photographs depict infamous, and newsworthy, aviation accidents. *Id.* ¶¶ 14(a)-14(b).

Distinguishing such works from 'photographs taken for aesthetic purposes,' the Ninth Circuit has noted that "works such as **news** broadcasts and **news** video footage are more factual in nature and thus are more conducive to fair use." *Elvis*, *supra*, 349 F.3d at 629 (citing *Sony Corp.*, *supra*, 464 U.S. at 455 n. 40, *L.A. News Serv. v. KCAL-TV Channel 9*, 108 F.3d 1119, 1122 (9th Cir. 1997)) (emphases added).

In another, similar, 'fair use' analysis, the Ninth Circuit has found:

> 'The Denny beating tape is informational and factual and news; each characteristic strongly favors [the user]. Likewise the fact that the tape was published before its use by [the alleged infringer]. Although the Videotape is not without creative aspect in that it is the result of [Marika] Tur's skills with a camera, still this factor makes it a great deal easier to find fair use.' [*KCAL-TV*, *supra*]; accord [*L.A. News Serv. v. Reuters TV Int'l, Ltd.*, 149 F.3d 987, 994 (9th Cir. 1998)]; *see also Harper & Row*, 471 U.S. at 563 ('The law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy.'); *L.A. News Serv. v. Tullo*, 973 F.2d 791, 798 (9th Cir. 1992). This factor clearly points toward fair use.

*L.A. News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 940 (9th Cir. 2002). *See also*, *e.g.*, *Marcus*, *supra* (scope of fair use is greater where the work constitutes an informational type work, as opposed to a more creative product); *Stewart v. Abend*, 495 U.S. 207, 237-38 (1990) ("fair use is more likely to be found in factual works than in fictional works"); *Harper & Row*, *supra*, 471 U.S. at 563 ("fair use is more likely to be found in factual works than in fictional works"); *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 23 (1st Cir. 2000) (difficulty in characterizing the nature of photographs led to a finding of neutral weight for the second factor in a fair use analysis).

1      Further, the Defendants ignore[3] the fact that the Photographs were published
2  (Compl. ¶¶ 20, 53(b)) and available on the Internet, specifically, via a simple Google
3  search (*Id*. ¶ 16) before they were used by AvSport. "The fact that a work is published or
4  unpublished also is a critical element of its nature. Published works are more likely to
5  qualify as fair use…" *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003)
6  (quoting *Harper & Row*, 471 U.S. at 564); *see also*, *e.g.*, *Perfect 10*, *supra*, 508 F.3d at 1167
7  (where "photos appeared on the Internet before" the potentially infringing use, "this
8  factor weighed only slightly in favor of the photographer"); *Seltzer*, *supra*, 725 F.3d at
9  1178 (an image having been "widely disseminated" before a use "tends to weigh in favor
10  of the fair use of that work").

11      Here, the Photographs – which are informational and factual and news – were
12  widely available on the Internet and published and widely disseminated years before
13  AvSport put them in its PowerPoint Presentation. This factor weighs in favor of fair use.
14  (Additionally, to the extent the Defendant has denied[4] this publication and
15  dissemination, discovery will be required, and this point cannot now be adjudicated.)

16      **H.   AvSport used only the Amount of the Photographs that was Necessary**
17      The third factor enumerated in 17 U.S.C. § 107 is "the amount and substantiality
18  of the portion used in relation to the copyrighted work as a whole."

19      AvSport has alleged it "used the entirety of the Photos (resized) because the
20  Photos could not be naturally severed, and because AvSport's use required the full image
21  of each of the Photos." Compl. ¶ 53(c).

22      Here, AvSport used low resolution versions of the entirety of each Photograph.
23  The fact that an entire work was copied does not, however, preclude a finding a fair use.
24  *Sony Corp.*, 464 U.S. at 449-50; *Hustler*, 795 F.2d at 1155 ("*Sony Corp.* teaches us that the
25  copying of an entire work does not preclude fair use per se.")

26

27  _____
[3] Defendant, implausibly, denies (Answer, ¶¶ 20, 53) allegations that the Photographs depicting news
events from 2009 and 2013 (Compl., ¶¶ 14(a)-(b)) were published before AvSport's use.
28  [4] See note 3, *supra*.

1   Too, "'this factor weighs less when considering a photograph — where all or most
2   of the work often must be used in order to preserve any meaning at all. […]' [*N. Jersey*
3   *Media Grp., Inc. v. Jeanine Pirro & Fox News Network, LLC*, 74 F. Supp. 3d 605, 621
4   (S.D.N.Y. 2015)] (quoting *Fitzgerald v. CBS Broad, Inc.*, 491 F. Supp. 2d 177, 188 (D.
5   Mass. 2007))." *Ferdman v. CBS Interactive, Inc.*, 342 F. Supp. 3d 515, 539 (S.D.N.Y.
6   2018). "[T]his factor is neutral – 'no more [of the works were] taken than necessary.'
7   *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 110 (2d Cir. 1998) (quoting *Campbell*, 510
8   U.S. at 589)…" *Ferdman*, *supra*; *and see, e.g.*, *Elvis Presley*, *supra*, 349 F.3d 622 at 630 ("if
9   the new user only copies as much as necessary for his or her intended use, this factor will
10  not weigh against the new user"); *Kelly*, *supra*, 280 F.3d at 943 (fair use found where
11  copying an entire image was necessary); *Graham Archives v. Dorling Kindersley Limited*,
12  448 F.3d 605, 613 (2d Cir. 2006) ("copying the entirety of a work is sometimes necessary
13  to make a fair use of the image").

14  The Defendant concedes that full reproduction is an acceptable fair use when
15  necessary (Motion 13:8-13), then contrives to determine on behalf of AvSport what
16  images would best make the point Dr. Shuch's presentations sought to teach (*Id*. 13:19-
17  14:13). AvSport used the Photographs to illustrate the dramatically different outcomes
18  that result from the use of, or lack of, adequate crew resource management. For the
19  Defendant to attempt to insert its own judgment as to what would be "helpful in
20  achieving that objective," as argument in a motion for judgment on the pleadings, is
21  inappropriate at best.

22  This factor weighs for a finding of fair use, or is at worst neutral. If the Court
23  wishes to have the record developed as to whether or not use of the Photographs in their
24  entirety was 'necessary,' a motion for summary judgment heard after discovery on this
25  point (and others) would be the appropriate procedural vehicle.

26
27
28

**I.     AvSport's Use had Minimal, if any, Effect on the Market for the Photographs**

The fourth and final factor enumerated in 17 U.S.C. § 107 is "the effect of the use upon the potential market for or value of the copyrighted work."

AvSport has alleged its "use of the Photos, resized to a low resolution to fit within a PowerPoint presentation, could not substitute for the original Photos [and that] AvSport's use of the Photos in an aviation safety teaching context, served a different market function [so that] AvSport's use […] had no negative effect upon the potential market for or value of AP's copyrighted Photos." Compl. ¶ 53(d).

Although, in *Harper & Row*, the Supreme Court described this factor as "undoubtedly the single most important element of fair use" (*supra*, 471 U.S. at 566), that stance has been tempered by more recent decisions: "Market harm is a matter of degree, and the importance of this factor will vary, not only with the amount of harm, but also with the relative strength of the showing on the other factors." *Campbell*, *supra*, 510 U.S. at 590, n.21.

The principal concern with which fair use is concerned is that of market substitution. Seltzer, *supra*, 725 F.3d at 1179 ("[w]here the allegedly infringing use does not substitute for the original and serves a 'different market function,' such factor weighs in favor of fair use"). A transformative work will often be in a different market from the original work and therefore unlikely to cause harm to the original work's market. *Kelly*, *supra*, 280 F.3d at 948. Where it is clear that the use has no effect on the potential market for the original work, fair use is likely to be found. *See*, *e.g.*, *Sony Corp.*, *supra,* 464 U.S. at 450; *Kelly*, *supra*, 280 F.3d at 944 (use of low resolution images in search results did not harm the market for or value of full-sized images).

Finally, courts look to the public interest implications raised by the subsequent use; *see*, *e.g.*, *Mattel Inc. v. Walking Mountain Productions*, 353 F.3d 792, 806 (9th Cir. 2003) ("not in the public's interest to allow Mattel complete control over the kinds of artistic works that use Barbie as a reference for criticism and comment"); *National Rifle*

1 *Assoc. of America v. Handgun Control Federation*, 15 F.3d 559, 562 (6th Cir. 1994) (the

2 "scope of the fair use doctrine is wider when the use relates to issues of public

3 concern").

4     The Defendant's argument against this factor weighing in favor of AvSport's fair

5 use **again** relies on extrinsic facts (Motion 15:3-12) not found within the pleadings, and

6 should not be considered by the Court at this time. If the Defendant wishes to rely on the

7 income it earns from the licensing of images, the purported devaluation caused by uses

8 such as AvSport's non-commercial use of low-resolution copies of photographs in

9 teaching materials, etc., AvSport must be permitted to conduct discovery into these

10 matters in order to properly formulate its own arguments in response.

11 **III.   CONCLUSION**

12     AvSport's Complaint contains sufficient factual allegations to support its cause of

13 action for a declaratory judgment as to its asserted fair use of the Defendant's

14 Photographs. The Defendant fails to establish that it is entitled to judgment as a matter of

15 law on this point, and the improper extrinsic facts it relies on in this Motion must be

16 ignored, or this motion must be treated as a motion for summary judgment and AvSport

17 must be permitted to conduct discovery to properly oppose such a motion. The Court

18 must not grant the instant Motion for Judgment on the Pleadings.

19                     Respectfully submitted,

20 Date: June 8, 2020        By: /s/ R. Christopher Harshman

21                     R. Christopher Harshman, Esq.
                    Attorneys for Plaintiff AvSport LLC

### Declaration of R. Christopher Harshman

I, R. Christopher Harshman, declare as follows:

1.     I am an attorney, duly licensed to practice law before all courts of the State of California and the United States District Court for the Central District of California, and an attorney of record for Attorneys for Plaintiff AvSport LLC ("AvSport") in this action. I have personal knowledge of the following facts except to those stated on information and belief, and as to those facts, I believe them to be true. If called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

2.     On March 30, 2020, the Court issued a notice of scheduling conference (ECF No. 20), setting that conference to be held on June 8, 2020.

3.     The Federal Rules of Civil Procedure, Rule 26(d)(1), did not permit discovery requests to be served until the parties conferred pursuant to Rule 26(f)(1), which could have been as late as May 18th, 2020 (twenty-one days before the June 8th, 2020 scheduling conference set by the Court in its March 30th, 2020 Order).

4.     Discovery responses are due at least thirty (30) days after they are served pursuant to, e.g., Rules 33(b)(2), 34(b)(2), and 36(a)(3), so, even if discovery requests had been personally served following a conference of counsel on May 18th (the realities of the COVID-19 "safer at home" orders, etc., made that implausible at best), responses would have been due Wednesday, June 17th, 2020.

5.     AvSport's opposition to the instant Motion was due June 8th, 2020 (twenty-one (21) days before the hearing on the Motion, as required by the Court's Local Rules, L.R. 7-9), leaving insufficient time to serve discovery, receive responses, and incorporate such responses into an opposition to a motion for summary judgment.

6.     Additionally, as the Court is aware, due to technological and other issues stemming from the unprecedented disruption to counsel's workplace and workflow occasioned by the COVID-19 pandemic, counsel for the parties did not in fact meet until the week of June 1st.

1

AvSport LLC's Opposition to Motion for judgment on the Pleadings – Harshman Decl.

7.      For the above reasons, AvSport cannot present facts essential to an opposition for a motion for summary judgment at this time, and requires time to take discovery.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 8th day of June, 2020, in Culver City, California.

/s/ R. Christopher Harshman
R. Christopher Harshman, Esq.

2

AvSport LLC's Opposition to Motion for judgment on the Pleadings – Harshman Decl.